UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| SAMUEL LEWIS TAYLOR, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Case No. 4:13-CV-1065-CEJ ) |
| DAVID NULL, et al., | ) ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on the motion of defendants Bruce Milburn, David Null, and Kenneth Ruble for summary judgment pursuant to Fed. R. Civ. P. 56(a). The plaintiff has filed a response, and the issues are fully briefed.

**I. Background**

Plaintiff Samuel Lewis Taylor brings this action under 42 U.S.C. § 1983, asserting a claim of excessive use of force. At the time of the events giving rise to his complaint, plaintiff was an inmate at the Potosi Correctional Center (PCC). Defendants Milburn, Null, and Ruble were employed at PCC as corrections officers.

Viewed in the light most favorable to plaintiff, the facts are as follows: Shortly before midnight on June 3, 2012, defendants Milburn and Ruble arrived at plaintiff's cell in the general population wing. Once there, they ordered plaintiff to perform a work assignment. When plaintiff refused, Milburn ordered him to "lock down" in his cell for failure to obey the order. Plaintiff complied with the lockdown order; he never threatened the guards and he never gave any indication that he was not fully complying. Milburn and Ruble then left the area.

Approximately twenty minutes later, Milburn and Ruble returned and ordered

plaintiff out of his cell and onto the main floor of the cellblock. Plaintiff complied without resistance. He was issued a conduct violation for failure to obey the order to perform his work assignment; he was also to be transferred to administrative segregation. Milburn or Ruble then handcuffed plaintiff to a restraint bench. Plaintiff did not threaten the guards or resist being handcuffed to the bench. Ruble then walked away, positioning himself in a control center at the other end of the cellblock, where he was able to see plaintiff. Milburn picked up a metal lock that was attached by a chain to the restraint bench and proceeded to strike plaintiff's right hand near the middle finger. There is no contention that plaintiff resisted or threatened Milburn or Ruble before or after being hit with the lock. Plaintiff's finger was not broken, but he suffered bruising, soreness, and swelling of his hand.

Null arrived after the lock incident and escorted plaintiff to the prison medical facility. Upon arrival plaintiff told the nurse that Milburn had struck him, but the nurse denied that the incident occurred and refused to note plaintiff's injuries.

Null then escorted plaintiff from the medical facility to the administrative segregation unit. As they were walking through a corridor, Null placed his hand on plaintiff's head and shoved plaintiff's face into a concrete wall. The force of the shove was sufficient to crack three of plaintiff's teeth and cause his mouth to bleed. Plaintiff was not threatening Null or resisting prior to that use of force. After placing plaintiff in a cell, Null conducted a strip search. Plaintiff remained handcuffed throughout the search and did not resist. Nevertheless, Null punched plaintiff twice in the jaw, causing it to swell. Null then left plaintiff alone in the cell.

Shortly before dawn on June 4, plaintiff obtained a medical service request

form (MSR) which he used to request treatment for the injuries to his finger, face, and teeth. On June 5, in response to the MSR, a nurse came to plaintiff's cell and observed him through a glass window. The nurse did not remove plaintiff from the cell for evaluation at the nurses' station and she could only see plaintiff's face through the window. She did not open the food tray port, from which she could have evaluated plaintiff's finger injury. Yet, the nurse reported performing a visual inspection, concluding that plaintiff had no signs of injury and that his teeth were intact.

Plaintiff filed a second MSR, after which he was seen by a different nurse on June 8. That nurse determined that plaintiff's right middle finger was swollen and tender to touch. She gave him Motrin and referred him to a dentist for his teeth and to a doctor for his finger. On June 14, plaintiff was seen by a dentist, whose examination revealed that three of his teeth were slightly chipped—injuries that were not present at plaintiff's previous dental examinations. On June 27, twenty-four days after being hit with the lock, plaintiff was examined by a doctor. The doctor reported no remaining soft tissue swelling or discoloration of plaintiff's finger.

PCC's response to the intra-prison grievance plaintiff filed reveals that video records exist of the areas in which the incidents allegedly occurred and for the timeframe in which they happened. Plaintiff requested preservation of and access to those video records. The video records have not been submitted in support of the defendants' motion for summary judgment.

## II. Legal Standard

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered if the moving party shows "that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." In ruling on a motion for summary judgment the court is required to view the facts in the light most favorable to the non-moving party and must give that party the benefit of all reasonable inferences to be drawn from the underlying facts. *AgriStor Leasing v. Farrow*, 826 F.2d 732, 734 (8th Cir. 1987). The moving party bears the burden of showing both the absence of a genuine issue of material fact and its entitlement to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). Once the moving party has met its burden, the non-moving party may not rest on the allegations of his pleadings but must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists. *United of Omaha Life Ins. Co. v. Honea*, 458 F.3d 788, 791 (8th Cir. 2006) (quoting Fed. R. Civ. P. 56(e)). Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corporation v. Catrett*, 477 U.S. 317, 322 (1986).

**III. Discussion**

Defendants argue that they are entitled to summary judgment for the following reasons: First, they contend that plaintiff failed to exhaust his intra-prison administrative remedies prior to filing this action. Second, defendants contend that the facts establish that they did not use any force against plaintiff.

Third, they argue that even if force was used it was *de minimis* under the circumstances. Fourth, defendants assert that they are entitled to qualified immunity.

### A. Section 1983's Exhaustion Requirement

Defendants contend that they are entitled to summary judgment because plaintiff failed to exhaust his intra-prison administrative remedies before filing suit. As the Court explained in its Memorandum and Order of March 5, 2015 [Doc. #119], however, a genuine dispute of material fact exists regarding whether Taylor properly exhausted his claims. Therefore, defendants are not entitled to summary judgment on that basis.

### B. Excessive Use of Force

#### 1. Milburn

"When confronted with a claim of excessive force alleging a violation of the Eighth Amendment, the core judicial inquiry is 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Santiago v. Blair*, 707 F.3d 984, 990 (8th Cir. 2013) (quoting *Hudson v. McMillian*, 503 U.S. 1, 6–7 (1992)). "Factors to be considered in deciding whether a particular use of force was reasonable are whether there was an objective need for force, the relationship between any such need and the amount of force used, the threat reasonably perceived by the correctional officers, any efforts by the officers to temper the severity of their forceful response, and the extent of the inmate's injury." *Treats v. Morgan*, 308 F.3d 868, 872 (8th Cir. 2002) (citing *Hudson*, 503 U.S. at 7). "'[T]he extent of any resulting injury, while material to the question of damages and informative as to the likely degree of force applied, is not

5

in and of itself a threshold requirement for proving this type of Eighth Amendment claim.'" *Santiago*, 707 F.3d at 990 (quoting *Williams v. Jackson*, 600 F.3d 1007, 1012 (8th Cir. 2010)).[1] Rather, the Court is to weigh the prisoner's testimony, the extent of the prisoner's injury, and whether the "security threat reasonably perceived by defendants, '[would] support a reliable inference' of an unnecessary and wanton infliction of pain." *Id.* (brackets in original) (quoting *Johnson v. Bi-State Justice Ctr./Ark. Dep't Corr.*, 12 F.3d 133, 136–37 (8th Cir. 1993)). In weighing those factors, however, the Court is required to "avoid[] the improper resolution of credibility issues," which are assessments for the trier of fact and not for summary judgment. *Id.* (quoting *Johnson*, 12 F.3d at 137).

In the instant case, a genuine dispute of material fact exists regarding whether Milburn used excessive force on Taylor by striking him with a lock. Milburn contends by affidavit that he did not use any force on Taylor. Taylor counters in his affidavit and his deposition that Milburn struck him with a lock. Because no evidence from disinterested witnesses[2] has been submitted to rebut Taylor's allegations, and because Milburn has not produced the video records, a genuine dispute of material fact remains regarding whether Milburn struck Taylor with a lock.

Milburn alternatively argues that he is entitled to summary judgment because, even if he struck Taylor with the lock, the force used was not excessive. He contends that any force used on Taylor was justified by Taylor's refusal to

---

[1]Consequently, the Court does not address the guards' argument that they are entitled to summary judgment because Taylor's injuries were *de minimis*. *See Chambers v. Pennycook*, 641 F.3d 898, 906–07 (8th Cir. 2011) ("[T]here is no uniform requirement that a plaintiff show more than a *de minimis* injury to establish an application of excessive force." (citations omitted)). Consistent with *Chambers*, the Court's discussion regarding the severity of Taylor's injuries is directed to determining whether the force allegedly used was excessive.
[2]Ruble's affidavit that he observed no use of force does not settle the matter.

perform a work assignment order. But that characterization of events is belied by the undisputed facts.

Milburn admits that after Taylor refused to perform the work assignment, the guards ordered Taylor to lock down in his cell and Taylor complied with that order. Milburn left the area and returned about twenty minutes later, demonstrating that, in his assessment, Taylor did not present a threat when he was locked in his cell. Once Milburn returned, Taylor was ordered from the cell and handcuffed to the restraint bench. Taylor complied with Milburn's orders and never threatened Milburn or resisted. Taylor was handcuffed to the chair, he was completely in Milburn and Ruble's control, and he was not threatening them or resisting. The Court's excessive force inquiry begins at that point.

In such circumstances, Milburn had no objective need to use any force on Taylor. *See Treats*, 308 F.3d at 872. The amount of force allegedly used (*i.e.*, striking Taylor's finger with a lock) would have been disproportionate because the amount of force required was zero. It would not have been reasonable for Milburn to perceive any threat on these facts. Moreover, while Milburn alleges that any force used was *de minimis*, because no force was justified, the lock strike, which caused finger swelling, could not have been a *de minimis* use of force.

Finally, while it is undisputed Taylor suffered no permanent injury to his finger, it does not follow that the force used in striking his finger was not excessive. "An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." *Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010). Some medical records show that Taylor's finger was swollen. The injury to Taylor's finger may be deemed

7

serious, given the absence of any need to use force. Thus, it remains a genuine dispute of material fact whether the amount of force applied to Taylor by Milburn was excessive. Accordingly, summary judgment is denied as to Milburn.

### 2. Ruble

Taylor's allegation that Ruble watched Milburn's use of force and did not stop it raises a failure-to-protect claim. The Eighth Amendment imposes a duty on prison officials to "take reasonable measures to guarantee safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). The application of that duty in the excessive use of force context can be divided along two temporal lines of analysis.

Prior to a guard's excessive use of force against a prisoner, to prove a failure-to-protect claim against another officer, a plaintiff is required to show (1) that the officer was aware of facts from which he could infer the existence of a substantial risk of serious harm to the plaintiff from the guard, (2) that the officer actually drew the inference, and (3) that the officer failed to take reasonable steps to protect the plaintiff from the guard. *Schofield v. Hopkins*, 491 F. App'x 772, 774 (8th Cir. 2012) (citing *Farmer*, 511 U.S. at 836–38, 844).

However, after a guard begins to use excessive force on a prisoner, the officer "who knows another officer is using excessive force has a duty to intervene." *Livers v. Schenck*, 700 F.3d 340, 360 (8th Cir. 2012) (citing *Putnam v. Gerloff*, 639 F.2d 415, 423 (8th Cir. 1981)). To prove that an officer failed to intervene to protect a prisoner from excessive use of force by a guard, the prisoner must show that the guard used excessive force, that the officer knew about the excessive use of force, and that the officer had the opportunity to intervene to prevent the excessive force by his compatriot but failed to do so. *Putnam*, 639 F.2d at 423.

Before Milburn struck Taylor none of the evidence establishes that Ruble was aware of facts from which he could have inferred the existence of a substantial risk of serious harm to Taylor. On the present evidence, Milburn had no history of using excessive force on Taylor or other inmates. Ruble therefore had no reason to think he needed to protect Taylor from Milburn. Moreover, because Milburn hit Taylor at most a single time, no pattern was established from which Ruble should have reasonably inferred the need to protect Taylor from subsequent excessive force. In such a one-off incident, even if Milburn's force was excessive, Ruble's lack of prescience does not establish a failure to protect Taylor.

Finally, the undisputed facts show that Ruble was not nearby when Milburn struck Taylor a single time, quickly and without warning. Ruble therefore had no opportunity to intervene to prevent the use of force, so he cannot be liable for failure to intervene. Accordingly, summary judgment is granted in favor of Ruble.

### 3. Null

The Court's analysis with regard to Milburn applies with equal force to Null. Null, like Milburn, cites only affidavits to support his assertion that he did not use any force on Taylor. Taylor counters with his deposition and affidavit. Given the competing testimony and in the absence of the video records of Null's interactions with Taylor, a genuine dispute of material fact exists regarding whether Null shoved Taylor's face into a concrete wall and later punched him twice in the jaw. The medical records are also insufficient to rebut the allegations. Viewed in the light most favorable to Taylor, the dentist's observation that Taylor had three chipped teeth would seem to corroborate his version of events, or at least not controvert it. Thus, credibility determinations remain for the trier of fact. *See Santiago*, 707 F.3d

at 990.

Moreover, it is undisputed that Taylor was not resisting or threatening Null. If Null shoved Taylor's face into a wall and punched him, then that use of force could not have been *de minimis*, and it may have been excessive. Accordingly, summary judgment is denied as to Null.

### C. Qualified Immunity

Having determined that Milburn and Null are not entitled to summary judgment based on the evidence presented, the Court next addresses their contention that they are nonetheless entitled to qualified immunity. Qualified immunity shields government officials from civil liability insofar as their conduct in performing discretionary functions "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "To overcome the defense of qualified immunity the plaintiff must show: '(1) the facts, viewed in the light most favorable to the plaintiff, demonstrate the deprivation of a constitutional or statutory right; and (2) the right was clearly established at the time of the deprivation.'" *Parrish v. Ball*, 594 F.3d 993, 1001 (8th Cir. 2010) (quoting *Howard v. Kansas City Police Dep't*, 570 F.3d 984, 988 (8th Cir. 2009)).

For a right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). "[A] general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, 'even though the very action in question has [not] previously been held unlawful.'" *Chambers*, 641 F.3d at 908

(citing *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)). The Court must therefore evaluate a defendant's conduct "from the perspective of a reasonable officer on the scene possessing the same information." *Louden v. City of Minneapolis*, 233 F.3d 1109, 1110 (8th Cir. 2000).

"[W]hether summary judgment on grounds of qualified immunity is appropriate from a particular set of facts is a question of law." *Lambert v. City of Dumas*, 187 F.3d 931, 935 (8th Cir. 1999) (citing *Greiner v. City of Champlin*, 27 F.3d 1346, 1352 (8th Cir. 1994)). "But if there is a genuine dispute concerning predicate facts material to the qualified immunity issue, there can be no summary judgment." *Greiner*, 27 F.3d at 1352.

### 1. Deprivation of a Constitutional Right

As the Court has explained, the Eighth Amendment prohibits the excessive use of force on a prisoner, the occurrence of which is a deprivation of a constitutional right. As the preceding discussion concludes, moreover, a genuine dispute of material fact exists regarding whether Milburn and Null used excessive force on Taylor. *See id*. Therefore, Milburn and Null's argument in support of qualified immunity fails as to the deprivation prong.

### 2. The Protection Against Excessive Force was Clearly Established

Milburn and Null have not asserted that the protection from excessive use of force by guards was not a clearly established right in June of 2012. Indeed, that fundamental constitutional right is long-established. *See, e.g.*, *Cummings v. Malone*, 995 F.2d 817, 822 (8th Cir. 1993) (citing *Hudson*, 503 U.S. at 6–7); *see Wilkins*, 559 U.S. at 37–38. A reasonable official would have understood that Milburn and Null's alleged actions violated Taylor's Eighth Amendment rights, so

they are not entitled to qualified immunity.  Therefore, their motion for summary judgment on the basis of qualified immunity is denied.

* * * * *

**IT IS HEREBY ORDERED** that the motion of defendants Bruce Milburn, David Null, and Kenneth Ruble for summary judgment [Doc. #97] is **granted as to Kenneth Ruble and denied in all other respects**.

_____
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 22nd day of July, 2015.